In the Matter of MARTHA PENTINEN, Petitioner, v NEW YORK STATE EMPLOYEES' RETIREMENT SYSTEM et al., Respondents.

Third Department, January, 19, 1978

APPEARANCES OF COUNSEL

*Wayne P. Smith* for petitioner.

*Louis J. Lefkowitz, Attorney-General (Winifred C. Stanley* and *Ruth Kessler Toch* of counsel), for respondents.

**OPINION OF THE COURT**

HERLIHY, J.

The petitioner's husband was a retiree from State service, receiving benefits from the State Employees' Retirement System (system) when he died on July 30, 1974. The petitioner, as his designated beneficiary, then became eligible to receive her husband's accumulated reserve ($65,665.32) in a lump sum, or a "life" annuity paying monthly benefits with no payment to her survivors, or a "cash refund" annuity paying monthly benefits, but also providing that if she died before receiving the sum of $65,665.32 in payments, the balance would go to her designated beneficiary (Retirement and Social Security Law, § 90, subd a). The system promptly advised the petitioner of the benefits and options available to her by a letter dated August 1, 1974.

By a letter dated August 9, 1974, the petitioner, after making a detailed reference to the prior letter from the system, stated that she wanted to elect the "cash refund"

annuity and requested the proper forms. The system responded to her letter by further correspondence from it dated August 15, 1974 which enclosed an application form and requested documentary proof of her date of birth.

The petitioner testified that seeking further information as to her options, she went to the system's office on August 19, 1974 and while there executed an application for a "life annuity". The record does not contain any evidence of coercion or duress as to the execution of the form and petitioner testified that before she executed it a representative of the system did advise her as to the meaning of the options. She particularly recited that the representative did *not* tell her which one he thought she should take. The petitioner received her first check by letter dated September 4, 1974.

■ In the absence of extraordinary circumstances, the above-discussed election of benefits, having been made within 90 days upon blanks provided by the Comptroller, and prior to the time when "the first payment on account of any benefit becomes normally due", became irrevocable (Retirement and Social Security Law, § 90, subd b). The record establishes that the only statutory election made by the petitioner was on August 19, 1974, for a "life annuity".

■ The petitioner, through her legal counsel, attempted to withdraw her election on November 22, 1974 and since the statutory time had passed, it cannot be said that the refusal to permit such a withdrawal was arbitrary or capricious.

■■ However, the Court of Appeals has held that where an applicant for benefits from a public retirement system is afflicted by a mental illness in the nature of a psychosis which would affect the rational ability or capability to make an election of benefits, the application or election is voidable under certain circumstances (*Ortelere v Teachers' Retirement Bd. of City of N. Y.,* 25 NY2d 196). This court has applied the *Ortelere* principles and in particular has emphasized the "special relationship" between a retirement system and its members (*Keith v New York State Teachers' Retirement System,* 46 AD2d 938, 941). In both the *Keith* case and *Ortelere,* the rule of Restatement, Contracts 2d, was followed, and in *Keith* it was held that although the applicant had not established any notice on the part of the retirement system as to the particular incompetency, the election was voidable if there was proof that the retirement system would not be prejudiced or that avoidance would not be inequitable. (See,

also, *Ortelere v Teachers' Retirement Bd. of City of N. Y., supra,* p 205.) It is apparent that the retirement system has purchased the life annuity with the balance of petitioner's husband's reserve, and thus circumstances have so changed that avoidance of petitioner's election would be inequitable.

■ The record herein establishes that the petitioner was suffering from a mental illness in the nature of a psychosis essentially similar to that in the case of *Ortelere.* The illness herein could be found to be sufficient to establish incompetency under the *Ortelere* test at the time when she executed the application form or blank and that it affected her decision-making capacity as to that act.

■ The decision of the hearing officer herein found that the system had no knowledge of her defect. A review of the record shows a complete lack of any actual knowledge of incompetency by the system and also of facts which should have indicated such a possibility. Even the petitioner's doctor testified that not every bereaved widow is thereby so depressed as to be incompetent, and, accordingly, the insistence by her counsel upon this proceeding that grief alone would establish a reason for avoiding irrevocability is not supported by the evidence. Accordingly, there is no basis for a finding that the election could be withdrawn based upon incompetency known to the system. This is best demonstrated by quoting from the record:

"Q. In other words, you came over here, as you stated earlier, for the purpose of finding out more about your rights under—

"A. Well, I had a booklet that I had home that I read about it, and I did come over here, and I just thought the one they had written up for the widows was the best one to take. I didn't understand, to tell you the truth. I was very confused with this Retirement thing, and I didn't have no one to advise me, or any other opinion as to what would be best.

"Q. Was that one of the reasons why you came over here on August 19th, was to get some advice and ask some questions?

"A. Well, not really. I mean I thought that option was the best. I was very confused with picking out what I should probably—if I had talked to someone more thoroughly, maybe I would have known which one to pick."

The petitioner's failure to seek advice should not be charged against the respondent.

While it could be found that certain aspects of the present proceeding meet the requirements set forth in *Ortelere (supra, p 205)* particularly where the court stated: "Lastly, there are no significant changes of position by the system other than those that flow from the barest actuarial consequences of benefit selection", it is apparent that that reason alone is not sufficient to reverse a finding by the respondent.

On balance, the factual situation herein is not legally sufficient to invoke the doctrines set forth in *Ortelere v Teachers' Retirement Bd. of City of N. Y. (supra),* and *Keith v New York State Teachers' Retirement System, (supra).*

The determination should be confirmed, and the petition dismissed, without costs.

GREENBLOTT, J. P., KANE, MAIN and MIKOLL, JJ., concur.

Determination confirmed, and petition dismissed, without costs.